RECEIVED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
2013 JAN 23 AM 10:43
JAMES W. McCORMACK, CLERK
BY: DEP. CLERK

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
JAN 23 2013
JAMES W. McCORMACK, CLERK
By: DEP CLERK

CASE NO. 5:13CV00016 DPM/HDY

I. Parties

A. Name of plaintiff: **C.R.F. BRANNON**

ADC# **124405A**

Address: P.O. BOX 500, GRADY, ARKANSAS 71644-0500

This case assigned to District Judge Marshall
and to Magistrate Judge Young

B. Name of defendant: **DR.LYTLE**

Position: CONTRACTED ORTHOPEDIC SURGEON

Place of employment: CONTRACTED BY CMS/CORIZON/ADC

Address: CONTACT CORIZON/C/O ARK. DEPT. OF CORR.

Name of defendant: **DR. CROWELL**

Position: CONTRACTED ORTHOPEDIC SURGEON

Place of Employment: CONTRACTED BY CMS/CORIZON/ADC

Address: CONTACT CORIZON/C/O ARK. DEPT. OF CORR.

Name of defendant: **DR. MOORE**

Position: DOCTOR CUMMINS UNIT INFIRMARY

Place of Employment: CORIZON/ARK. DEPT. OF CORR.

Address: P.O. BOX 500, GRADY, ARKANSAS 71644-0500

Name of defendant: **MS. ESTELLE BLAND, APN**

Position: NURSE PRACTICTIONER

Place of Employment: CUMMINS UNIT/INFIRMARY/CORIZON MEDICAL

Address: P.O. BOX 500, GRADY, ARKANSAS 71644-0500

II. Are you suing the defendants in:

official capacity only
**X** personal capacity only
**X** both official and personal capacity

III. Previous Lawsuits:

Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action?

Yes ______ No __X__

If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another pieced of paper, using the same outline.)

Parties to previous lawsuit

Plaintiffs: N/A

Defendants: N/A

Court (if federal court, name the district; if state court, name the county):

N/A

Docket Number: N/A

Name of judge to whom case was assigned: N/A

Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending? N/A

Approximate date of filing lawsuit: N/A

Approximate date of disposition: N/A

IV. Place of present confinement: Arkansas Department of Correction (ADC), Cummins Unit

P.O. Box 500, Grady, Arkansas 71644-0500

V. At the time of the alleged incident(s), were you:
(check appropriate blank)

__________in jail and still awaiting trial on pending criminal charges

_____X____ serving a sentence as a result of a judgment of conviction

__________in jail for other reasons (e.g., alleged probation violation, etc.)
explain: ____________________________________________

VI. The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, requires complete exhaustion of administrative remedies of all claims asserted, prior to the filing of a lawsuit. There is a prisoner grievance procedure in the Arkansas Department of Correction, and in several county jails. Failure to complete the exhaustion process provided as to each of the claims asserted in this complaint may result in the dismissal without prejudice of all the claims raised in this complaint.

A). Did your file a grievance or grievances presenting the facts set forth in this complaint?

Yes ___X___ No ______

B). Did you completely exhaust the grievance(s) by appealing to all levels within the grievance procedure?

Yes ___X___ No ______

If not, why? ____________________________________________

VII. Statement of Claim

State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places.

The Prison Litigation Reform Act (PLRA) requires that the Plaintiff exhausts any availible administrative remedies prior to filing such a complaint under a Section § 1983 [42 USC §1997(e)(a)] whereby the Plaintiff admits that the Arkansas Department of Correction (ADC) does have an Inmate Grievance Procedure, and tht the Pl;aintiff has as of this present filing fully exhausted all said remedies. [See Attached]

The Plaintiff (acknowledges) that none of the so named Defendants hereinn are entitled to any form of immunity. Futhermore, so stated that any preson so acting under color of law, or Federal, or State protected rights subjected to action under Section 42

USC§1983.

Under 42 USC §1983, a prisoner may seek redress against any person or persons acting under color of law, when said person/persons deprives said prisoner of any right guaranteed by Constitutional or Federal/State tort laws, [see: ***OKLAHOMA V. CITY OF TUTTLE**, 471 U.S. 808 (1985), **McRAVEN V. SANDERS**, 577 F. 3D 974 (8th CIR. 2009)*; also see; ***LYONS V. MICHIGIAN DOC**, (E.D. MICH) CASE NO.: 2:08-CV-13631-CER/VMN*].

Be it so stipulated that under, 42 USC § 1983. does provide in pertinent part that, "Every person who, under color of law, any statute, ordinance, regulation, custom, or usage, subjects or caused to be subjected, any citizen of the United States, or other person within the jurisdiction thereof to be deprived of any rights, priveleges, or immunities secured by the Constitution and laws, "shall" be held liable to the injured party in siad action of law pursuant to Section 42 USC §1983".

Therefeore, all herein so named Defendants are being held accountable in their personal as well as to their official capacities, for having shown deliberate indifference to the serious medical needs of the Plaintiff.

As well as for their gross misuse of power that was /is possessed by each so named Defendant by virtue of Constitutional and State laws, which clothed them with the authority State law as agents of State Employees (**or sub-contracted employees**) or by being an employee of CMS/Corizon Medical Services.

INCIDENT: On or about the 2nd day of September, 2009, I broke the top of my Fibula bone off and blew out my left knee playing soft-ball. On the 4th day of September, Dr. Lytle, in Pine Bluff Jefferson Regional Medical Center did surgery to correct my broken

knee. (Dr. Lytle, is an Orthopedic Specialist under contract by Corizon Medical Service (CMS) for the ADC).

After the sergery it was detrmined that my knee was so far out of alignment, that it would not heal properly, nor would it allow for me to be able to walk on it. [I was limited to use of a wheel-chair only as to be able to move about].

Therefore, in August 2010, Dr. Lytle, once again performed surgery on my knee, this time he replaced my knee. Yet again, Dr. Lytle performed unsuccessfully and either put in a bad knee replacement, or incorrectly inserted the knee as before. After months of pain and suffering, I was then sent to a different Orthopedic Specialist (Dr. Crowell). Wherefore, it was scheduled that I would have orthoscopic surgery done on my knee, which Dr,. Crowell performed on or about the 19th day of March, 2012.

I was informed by Dr, Crowell, that he removed scar tissue and nothing more. Dr. Crowell further informed me that the stitches would be removed in (2) weeks, and that I would be seen by hin in (3) three weeks. [That was March 19, 2012, yet as of May 23rd, 2012, I still had not been seen by a doctor.

As to the removal of the stitches, I repeatedly asked Nurse Chance, whom said she would check with Ms. Bland or Dr. Moore, yet after seveal weeks (3-4) I was forced to remove them myself.

On or about the 18th day of May, I had an X-Ray taken of my leg. Then on or about the 22nd day of May, 2012, I recieved a notive (memo) in the mail from infirmary, stating no follow up necessary "X-Ray Okay". [See Attachd]

On or about May 25th, 2012, my wheel-chair was taken away. This was done after I was called to the Cummins Unit Infirmary by Ms. Esau, whom informed me that I was

to walk as much as possible, "per orders from Dr. Crowell". I was given a "cane" for which as of this date I still can not use for long walks, I must either use crutches or not go out at all.

I was informed by that (by Ms. Bland) that the notes from Dr. Crowell indicated I was to "exercise my knee, do quad strengthening, ... a follow up was not indicated". "Nor was it shown where the use of wheel-chair was discontinued". Ms. Bland informed me that I would be given salsatate and tylenol for my pain, and referred to Dr. Moore. Yet still I was not seen by Dr. Moore. On August 24, 2012, I recieved my appeal from Director's official Deputy, Wendy Kelly, whom stated to wit: "A request has been made to your medical department for you to be scheduled with Dr. Moore at the next available time". "And due to delay in you being seen by Dr. Moore this appeal is '***with merit***'."

From on or about the 25th day of May, 2012, until this filing date, several requests were submitted orally as well as written, seeking renewal of pain medications not till Ms. Bland placed me on salsatate and tylenol was I given anything. [Note: Pain so severe, with swelling that can't walk on leg without crutches to keep leg off floor.]

When finally seen by Dr. Moore, it was discussed that I need to exercise my leg (this on August 21, 2012). Dr,. Moore, seemed unconcerned about the fact that knee was so lose and leg still at an odd angle that it makes it impossible to straighten out.

Dr, Moore only looked at leg/knee never allowing for an x-ray or physically touching knee to see how loose the knee actually was. He just said some people just don't heal properly. [See attached:Grievance #CU-12-02130]. Dr, Moore's attitude when seen on or about August 29, 2012, was one of lack of concern, by that he was evasive in answers and showed unprofessional conduct by his actions. It was Dr. Moore, (Infirmary

video camera will prove) whom walked out of examination room on that day, not the Plaintiff. Because Plaintiff, as stated *can not* to this day fully straighten out leg.

Plaintiff, has complied with medical orders to the fullest, yet still Dr. Moore, Ms Bland, and Doctors: Lytle and Crowell have shown deliberate indifference to the medical needs of Plainitff. And have left the Plaintiff now disabled for life unless proper medical treatment [to even include a new knee replacemenjt] in order to walk normally so as to be able to have a normal activities. [See attached: Stiff Kness Sydromee, as provided by Dr. Moore). The Defendnats provided no physical therapy at the Cummins Unit, yet expected Plaintiff to provide his own.

By the very response of grievance #12-02130, Dr. Moore, Ms. Balnd, and their supervisor, Ms. Wendy Kelly, Deputy Director, completely misled the court as to issus. There was no mention in Plaintiff's action concerning bed sores, diarreah , etc. or extra matress.

The record will clearly show that the Plaintiff has filed numerous grievances concerning these current serious medical needs/issues, and that the inadequate medical care taken by the Defendants for failure to ensure that proper physical therapy is given as well as proper medical care to ensure that all precautinos were taken during and after surgery to allow for full recovery.

Dr, Moore, and Ms. Bland did not follow medical protocol for employees (Doctors or Assistants) from which CMS contracts with to provide health care. Dr. Moore, has been known to say "I can't give you this or that (meaning pain medication or support devices) without first getting to know you better".

The Defendants so named herein have violated the Plaintiff's rights as provided

for by the United States Constitution, to be free from Cruel and Unusual Punishment [to include pain and suffering wontonly] also having violated the Americans With Disabilities Act (ADA) a rehabilitation act.

The Defendants total disregard for Plaintiff's well being are clearly deliberate indifference to the Plaintiff's "Serious Medical needs", and give rise to intentional infliction of emptional stress otherwise known as "Tort of Outrage".

In this present claim [much like claims of ***LANFORD AND HARDIN***, 614 F.3D 455 (8TH CIR. 2010) and in ***ROBBINS V. MUMTAZ ET AL***, **CASE NO:5:12CV-00415-BSM/BD**] the facts must be consrtued in light most favorable to the Plainriff. Which, when all facts are given full review, with Plaintiff's evidence [which if an evidentary hearing is held] will prove each and every element of claims, as will prove the established violations of Constitutional law, [ see ***CROOKS V. NIX***, 872 F. 3d 800 (4TH CIR. 1989). ***BOYD V. KNOX***, 47 F.3d 966 (8th cir. 1995) , and ***LOGAN V. CLARK***, 118 F. 3d 647 (8TH CIR. 1997)].

**CONCLUSION**

The Plaintiff has suffered for too long with the deliberate indifference from the Defendants for serious medical needs and if this Honrable Court will review the facts it will see that "yes" this court has the jurisdiction, "yes" the Plaintiff has stated a claim.

And will if given an evidentiary hearing prove without a doubt that Defendnats are liable for damages under 42 USC §1983 Civil Litigation. The forced use if the prison grievance procedure has injured the Plaintiff this far, due to retaliation by Defendants and CMS personel. Therefore, failing to take corrective action has contravened clearly the establiched principal of Eighth Amendment jurisprudence [see ***MILLER***, supra 75 F/ 3d

at 1308, ***CROOKS,*** 872 F. 2d at 804, and ***MESSIMER,*** 702 F 2d at 732]. And that the Plaintiff prays that this Honorable Court will take into consideration that the Plaintiff is not schooled at law, nor apply able to properly defend himself in court.

VIII. Relief Sought

A). The Plaintiff seeks injunctive relief in the form of having the Grievance Procedures at the ADC deemed to be Unconstitutional when applied to medical issues, due to Retaliation by Medical Staff for having sought use of said Grivance Procedure.

B). Plaintiff seeks Punitive Relief from each so named Defendant as follows:

1). "Dr. Lytle", to wit: If not for incompetent medical procedure and malpractice, Plaintiff might not be suffering so, which Dr. Lytle was allowed by CMA to perform not one (1) but two (2) surgeies on the Plaintiff, which had now resulted in permanent diabilities, wherefore, Plantiff seeks dmages for punitive at Two Hundred and Fifty Thousand Dollars ($250, 000.00), as well as One Million Dollars ($1,000,000) for Compensatory damages. For the Deliberate Indifference and Callous/Reckless disregard for Plaintiff's Serious Medical Needs [see: 42 USC §1981(a)(b)(1); ***SMITH V. WADE, 461 U.S. 30 (1983)***] and [***HAYES V. FALUKNER, 388 F 3d 669 (8th Cir.2006)***]

2). "Dr. Crowell", To wit: Dr. Crowell is to be held liable for his incompetent medical malpractice, which when combined to all other procedures performed has left Plaintiff permanently disabled. Therefore, Plaintiff seeks dmages for Punitive at Two Hundred and Fifty Thousand Dollars ($250, 000.00), as well as One Million Dollars ($1, 000,000.00) for Conpensatory Damages. For deliberate indiffernce to Plaintiff;s Serious Madical Needs. [See: 42 U.S.C. 1981(a)(b)(1); ***SMITH V. WADE, 461 U.S. 30 (1983)***] and [***HAYES V. FALUKNER, 388 F 3d 669 (8th Cir.2006)***]

3). "Dr. Moore", to wit: for Defendant's disregard for safety and well being, as well as total callousness, Deliberate Indifference for the Serious Medical Needs of Plaintiff. The Plaintiff seeks Punitive Damages in the amount of One Hundred and Fifty Thousand Dollars ($150,000.00), as well as Five Hundred Thousnad Dollars ($500,000.00) for Compensatory damages [see: ***LANGFORD V. LYTLE***, ***614 F 3d 445 (8th CIR 2010)***, and ***LOGAN V. CLARK, 119 F 3d 647 (8th CIR 1997)*** also for Retaliating action for Plaintiff's use of the Grievance Procedure.

4). "Ms. Bland", to wit: For Defendants disregard to safety, and well being, and the total disregard by callous, reckless deliberate indifference to the Plaintiff's medical needs and for allowing of the pain and suffering by retaliatory actions for having used the grievance procedure, the Plaintiff seeks damages in the amount of: for punitive damages One Hundred Thousand Dollars ($100,000.00), for compensatory damages the amonnt of Two Hundred and Fifty Thousand Dallars ($250, 000.00). [see: ***LANGFORD V. LYTLE***, ***614 F 3d 445 (8th CIR 2010)***, and ***LOGAN V. CLARK, 119 F 3d 647 (8th CIR 1997)***]

And any and all other relief that this Honorable Court may deem appropriate.

I, C.R.F. Brannon, declare under penalty of perjury (18 U.S.C. § 1621) that the foregoing is true and correct.
Executed on this 22 day of JAN., 2013.

C.R.F. Brannon, ADC #124105A Bks 8-A
P.O. Box 500, Cummins Unit, ADC
Grady, Arkansas 71644-0500

# Medical Department
# Notification of Diagnostic Test Results

**Inmate Name** CRF Brannon

**ADC Number** 124405

This is to inform you that we have received the results of your diagnostic test performed on 5-18-12.

1. ______ Based on the result of your test, you will be scheduled for follow-up with a physician or mid-level practitioner within three working days of this notice. Please check the daily 'Lay-in' list for this encounter.

2. __✓__ Based on the result of your test, there is no clinical need for follow-up at this time. To discuss your test results with a member of our health care staff, you may submit a Sick Call Request or request an interview with the Health Services Administrator.

Knee Xray Okay

**Neither the follow-up in item 1, nor a request initiated by you in item 2 will result in a co-pay fee.**

**Signature of Physician or Mid-level Practitioner** [signature]

**Date** 6/19

They took my Wheelchair on Friday 25th of May

RECEIVED

CUMMINS UNIT

DATE/TIME REC'D IN MEDICAL: 7AM

DATE/TIME TRIGGED:

TRIAGE LEVEL 1=EMERGENT 2=URGENT 3=ROUTINE

PRINT NAME AND TITLE

Medical

# REQUEST FOR INTERVIEW

UNIT Cummins

DATE: 6/6/2012

TO: Dr. Moore OFFICE: Infirmary

FROM: C.R. Brannon (Inmate's Name) NUMBER: 124405 BKS: 8B

JOB ASSIGNMENT: G/F SUPERVISOR: Mrs. Hughes

WORKING HOURS: 7:00 A.M. TO: 3:00 P.M.

GIVE A DETAILED REASON FOR INTERVIEW: I Talk to you last week you was suppose to have order all my meds but the lady at the pill window told me today that my tramidol pain pill will run out on the 11th which is Monday can you get this order for me before I run out. Thank you

C.R. Brannon
Inmate's Signature

ADC-CDC—614

* You have been referred to the provider for evaluation. Thanks
Crancer

OFFICE USE ONLY
GRV. # CU-12-01326
Date Received: RECEIVED JUN 0 4 2012
GRV. Code #: 600
CUMMINS UNIT GRIEVANCE OFFICE

**UNIT LEVEL GRIEVANCE FORM (Attachment I)**

**Unit/Center** CUMMINS

**Name** C. R. BRANNON

**ADC#** 124405 **Brks #** 8-B **Job Assignment** G/F

5-25-12 (Date) STEP ONE: Informal Resolution

6/1/12 (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.) If the issue was not resolved during Step One, state why: my leg is still mess up I just want it fixed, No-one was concerned About what Dr Crowell Said About taking my stitches out my leg & every day want them happy to take my wheelchair

_______ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: _______________

RECEIVED DEPUTY DIRECTOR ARKANSAS DEPARTMENT OF CORRECTION JUL 6 2012 HEALTH & CORRECTIONAL PROGRAMS

*Is this Grievance concerning Medical or Mental Health Services?* yes *If yes, circle one: medical or mental*

**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected. (Please Print): Since Sept. 2, 2009, when I Broke my Fibula Bone and Blew-out my Left Knee, I have had 1-Knee Replacement after first having Surgery to Correct the Knee by Dr Lytle of Pine Bluff. all of which has resulted in more suffering. Then on optic Surgery on my leg By Dr Crowell on the 15th of march 2012! whereby my Stitches were due out in a week. But after several request's to have them removed and several week's Had to Remove them my self, Then on 18th of may X-Ray was taken and Results said That my leg was fine, But to This very day I can not straighten out my leg and am in constant Pain. Now on 5-25-12, I was given a Cane, and had my wheelchair Taken away because "Dr Crowell said for me to walk as much as possible"! But Nothing was said to me by Dr. Crowell. It Causes Severe Pain to a point of near collaspe! This Type Treatment is Cruel & Unusual punishment and shows Deliberate indifference to Medical needs as prescribed & Protected By U.S. Constitutional amendment 6th, 8th, and 14th.

C. R. Brannon — 5-25-12 12:39pm
Inmate Signature — Date

***If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee.***

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**

This form was received on __________ (date), and determined to be **Step One** and/or an Emergency Grievance _______ (Yes or No). This form was forwarded to medical or mental health? _______ (Yes or No). If yes, name of the person in that department receiving this form: [signature] Date 5/28/12

CO D. Selmon — 90629 — [signature] Selmon — 5/25/2012
PRINT STAFF NAME (PROBLEM SOLVER) — ID Number — Staff Signature — Date Received

Describe action taken to resolve complaint, including **dates:** Dr Warren States, This was Requested Per Dr Crowell, To Take wheelchair. If you Are having Any Problems, Place A Sick Call Requests. [signature] 5/31/12

[signature] King 6/1/12 — x C.R. Brannon 6/1/12
Staff Signature & Date Returned — Inmate Signature & Date Received

This form was received on ________ (date), pursuant to **Step Two**. Is it an Emergency? ______ (Yes or No).
Staff Who Received Step Two Grievance: ______________ Date: ________
Action Taken: ______________ (Forwarded to Grievance Officer/Warden/Other) Date: ________
If forwarded, provide name of person receiving this form: ______________ Date: ________

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance Officer; **ORIGINAL**-Given back to Inmate After Completion of Step One and Step Two.

IGTT420
3GH

Attachment IV

INMATE NAME: Brannon, C.R. F. ADC #: 124405A GRIEVANCE #: CU-12-01326

HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

(609) You reported in your complaint of 5-25-12 that your wheelchair was taken from you and you were given a cane. You report you were told that Dr Crowell wanted you to walk as much as possible but nothing was said to you by Dr Crowell. Dr Crowells notes indicate for you to exercise knee and quadriceps strengthening and for crutches or a cane. You reported that it causes you severe pain to the point of collapse to walk. You were seen by the provider on 6-13-12 and referred to the unit provider. I find no indication that this appointment has occurred therefore I find this grievance with merit but resolving as you have been rescheduled

M. Austin — DHA — 7-6-12

Signature of Health Services Administrator/Mental Health Supervisor or Designee — Title — Date

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT OF CORRECTION
JUL 11 2012
HEALTH & CORRECTIONAL PROGRAMS

**INMATE'S APPEAL**

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE? Please see the Response that was written on Grievance CU 12 - 01368 you recieved this past week. For this answer to appeal Is the same, since wheelchair taken away all pain med's also taken away as if I was maracululy cured and as of this date 7-9-12 I still have No pain meds, nor have I been seen by a Doctor.

C.R. Brannon — 124405 — 7-9-12

Inmate Signature — ADC# — Date

IGTT430
3GD

Attachment VI

INMATE NAME: Brannon, C.R. F. ADC #: 124405 GRIEVANCE#:CU-12-01326

**CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION**

On May 25, 2012, you grieved that your wheelchair has been discontinued. You state that you had surgery on your knee in March 2012 and need the wheelchair. You state that you cannot straighten out your leg. You state that you were issued a cane on May 25, 2012 and your wheelchair was taken away from you. You were advised that Dr. Crowell said you needed to walk as much as possible, but he did not tell you. You further state you had to take the stitches out yourself.

The medical department responded, "You reported in your complaint of 5-25-12 that your wheelchair was taken from you and you were given a cane. You report you were told that Dr Crowell wanted you to walk as much as possible but nothing was said to you by Dr Crowell. Dr Crowell's notes indicate for you to exercise knee and quadriceps strengthening and for crutches or a cane. You reported that it causes you severe pain to the point of collapse to walk. You were seen by the provider on 6-13-12 and referred to the unit provider. I find no indication that this appointment has occurred therefore I find this grievance with merit but resolving as you have been rescheduled"

Your appeal states that you filed the complaint on May 25, were not seen until June 13 just to be advised that you would have to be rescheduled, and your pain medication has been discontinued.

According to your medical record, you were seen by Dr. Crowell on May 23, and he noted that you needed to exercise your knee, do quad strengthening, use a cane or crutches, and a follow up was not indicated. You were seen by Mrs. Bland on June 13, for complaints of wanting Tramadol and a wheelchair. Mrs. Bland ordered Salsalate for you, referred you to Dr. Moore, encouraged you to practice the quad exercises that you discussed with Dr. Crowell, and noted that you stated that you were not going to do them because they made your knee hurt. You were advised in the medical department's response on July 6, that you would be scheduled to see Dr. Moore regarding Mrs. Bland's referral. A review of your medical record indicates that you have not been seen by Dr. Moore. You were seen by Mrs. Bland on August 13, regarding a mat script, back pain, diarrhea and not being seen by Dr. Moore. Mrs. Bland ordered you a clear liquid diet, Aspirin 81 mg, and Pink Bismuth, issued a script for a cane, crutches and prescribed foot wear, and she referred you to Dr. Moore regarding pain medication and a mat script. A review of your medical record indicates that you have not been seen for this referral according to your electronic record. A request has been made to your unit medical department for you to be scheduled with Dr. Moore at the next available time. A review of your medical record indicates that you have an order for Tylenol and Salsalate to help assist with your pain.

Due to the delay in you being seen by Dr. Moore, this appeal is with merit.

Wendy Kelley
Director

8/24/12
Date

IGTT420
3GH

Attachment IV



INMATE NAME: Brannon, C.R. F. ADC #: 124405A GRIEVANCE #: CU-12-1326

HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

(609) You reported in your complaint of 5-25-12 that your wheelchair was taken from you and you were given a cane. You report you were told that Dr Crowell wanted you to walk as much as possible but nothing was said to you by Dr Crowell. Dr Crowells notes indicate for you to exercise knee and quadriceps strengthening and for crutches or a cane. You reported that it causes you severe pain to the point of collapse to walk. You were seen by the provider on 6-13-12 and referred to the unit provider. I find no indication that this appointment has occurred therefore I find this grievance with merit but resolving as you have been rescheduled.

| M. Austin | DN 1 HSA | 7-2-12 |
|---|---|---|
| Signature of Health Services Administrator/Mental Health Supervisor or Designee | Title | Date |

RECEIVED-DEPUTY DIRECTOR ARKANSAS DEPARTMENT OF CORRECTION
JUL 6 2012
HEALTH & CORRECTIONAL PROGRAMS

**INMATE'S APPEAL**

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE? This Complaint was filed as of 5-25-12, yet to not be seen until 6-13-12 only to be told I would be Rescheduled is not serving any purpose to solution. I must still as I have been all these weeks suffer an. Deal with severe pain. Now I have even been taken off all Pain Medication as if I were somehow maracktishly healed. Therefore I must pursue this Process in order to take further legal Action for Providers at Cummins Unit & Corizon Being deliberately indifferent to my Medical needs and forcing me to suffer excruciating Pain.

| C.R. Brannon | 124405 | 7-3-12 |
|---|---|---|
| Inmate Signature | ADC# | Date |

**UNIT LEVEL GRIEVANCE FORM (Attachment I)**

FOR OFFICE USE ONLY
GRV.# CU-12-02130
Date Received: SEP 04 2012
GRV. Code #: 6
GRIEVANCE OFFICE

Unit/Center Cummins
Name C.R. Brannon
ADC# 124405 Brks # 8-B Job Assignment G/F

8-30-12 (Date) STEP ONE: Informal Resolution

8-31-12 (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: Inf. Records are falsified, See following INF. VIDEO Film, Hallway Camera in front of INF. as well as Security Logs for Proof.

______ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: ______

*Is this Grievance concerning Medical or Mental Health Services?* yes *If yes, circle one: medical or mental*

**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected. (Please Print): ON 8-29-12 I went to see Dr. Moore whom did not show any actual concern as to the issue at hand, That being that having had Knee replacement surgery with further orthoscopic surgery that has still left me unable to walk properly. Im in constant pain Dr. Moore & infirmary staff took away wheel chair, Extra mattress, not to forget about having taken away all pain medication's. Wherefore having basicly stated your Healed! But Dr Moore never properly evaluated my Knee. He said "There are just some people whom don't heal properly"! If you look, every one else here at Cummins who had Knee replacement's have been able to resume all activities to include running & play ball. Me, I can't walk without severe pain constantly. I have been shown deliberate indifference by Dr Moore & Corizon wherefore Denying my 8th amendment Right. This is my only course of action/redress prior to having to see legal action pursuant to 42 USC § 1983 Litigation for pain & Suffering.

C.R. Brannon 8-30-12
Inmate Signature Date

***If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee.***

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**

This form was received on 8-30-12 (date), and determined to be **Step One** and/or an Emergency Grievance ______ (Yes or No). This form was forwarded to medical or mental health? ______ (Yes or No). If yes, name of the person in that department receiving this form: [signature] Date 8-30-12

Scallion 92153 [signature] 8-30-12
PRINT STAFF NAME (PROBLEM SOLVER) ID Number Staff Signature Date Received

Describe action taken to resolve complaint, including **dates**: There is no documentation in the computer, That you were seen by Dr. Moore on 8/29/12, [illegible] Hours on 8/30/12

J. King 8-31-12 X C.R. Brannon 8/31/2012
Staff Signature & Date Returned Inmate Signature & Date Received

This form was received on ______ (date), pursuant to **Step Two**. Is it an Emergency? ______ (Yes or No).
Staff Who Received Step Two Grievance: ______ Date: ______
Action Taken: ______ (Forwarded to Grievance Officer/Warden/Other) Date: OCT 8 2012
If forwarded, provide name of person receiving this form: ______ Date: ______

RECEIVED DEPUTY DIRECTOR ARKANSAS DEPARTMENT OF CORRECTION
HEALTH & CORRECTIONAL PROGRAMS

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance Officer; **ORIGINAL**-Given back to Inmate After Completion of Step One and Step Two.

IGTT430
3GD

Attachment VI

INMATE NAME: Brannon, C.R. F. ADC #: 124405 GRIEVANCE#:CU-12-02130

August 30, 2012, you grieved you are still unable to walk properly after having knee replacement surgery and that when you saw Dr. Moore on August 29 he did not show any actual concern about your problem. You complain you are in constant pain and Dr. Moore has taken away your wheel chair, extra mattress and all of your pain medication.

The medical department responded, "You were seen by Dr Moore on 8-29-12. Dr Crowell recommended knee exercises, Quadriceps strengthening and ambulation with a cane or crutches, not a wheel chair. You admitted to not performing the exercises because it hurt. You were informed there was no medical indication for an extra mattress at that visit. Dr Moores notes indicate he could not perform a complete assessment of your knee because you became angry and left. You have orders for Naproxen and Tylenol for pain. Your grievance is without merit. The response at the informal level was in error. If your medical condition changes please address any concerns through the sick call process."

You disagree with the Health Services Response in your October 3 appeal because Dr. Moore stated he did not see you on August 29, but he did. You state you asked him 3 or 4 times what could be done about your knee and he kept saying there is nothing they can do about your knee so you got up and left. The portion written below your signature line is prohibited by policy and not part of your appeal; you must write in the designated space.

The medical department acknowledged that the informal level response was in error, and that Dr. Moore did document seeing you on August 29. Ms. Bland had referred you to Dr. Moore when she saw you August 13 and you requested a script for an extra mattress because of back pain and something for diarrhea. Dr. Moore noted there were no radiographic studies of your back in your chart and that you denied any history of pressure sores; you responded you could not bend or straighten your left leg like you used to when asked about knee pain. You stated that you could not understand why other inmates who had knee replacement did not seem to have any problems; and Dr. Moore tried to explain to you that Dr. Crowell had not recommended a follow-up after your recent arthrolysis (loosening of adhesions in an ankylosed joint by surgery) and that your condition may be permanent. You demonstrated decreased flexion and extension of your left knee at one point, but became angry and argumentative and left before he could complete his examination. He observed you walk away very quickly without any indication of pain and only a mild limp. He documented no medical indication for an extra mattress at that time and that you had been non-compliant with treatment recommendations. You had current prescriptions for Salsalate and Tylenol and there is no documentation you requested additional medications for pain during your encounter with Ms. Bland or Dr. Moore. August 31 Dr. Moore mailed you a four page article on Arthrofibrosis to help you better understand your condition. Walking out of an evaluation with a provider will delay a full evaluation of your complaint; therefore, I find this appeal without merit.

It appears you are frustrated with the outcome of your knee surgery; regardless, you are encouraged to cooperate with your care plan in the future. While it may be painful, walking and exercising are imperative in order to restore full function to a joint after surgery and if those exercises are not performed immobility may result.

[signature] 11/14/12

Director Date

IGTT420
3GH

Attachment IV

B4 / B33

INMATE NAME: Brannon, C.R. F. ADC #: 124405A GRIEVANCE #: CU-12-02130

HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

(609) Your 8-31-12 grievance has been received and reviewed as well as your medical record to determine if medically necessary healthcare, as determined by your healthcare providers, has been provided to you.
You state on 8-29-12 Dr Moore did not properly evaluate your knee and has taken away your wheelchair, extra mattress and taken away all pain medications.
You were seen by Dr Moore on 8-29-12. Dr Crowell recommended knee exercises, Quadriceps strengthening and ambulation with a cane or crutches, not a wheel chair. You admitted to not performing the exercises because it hurt. You were informed there was no medical indication for an extra mattress at that visit. Dr Moores notes indicate he could not perform a complete assessment of your knee because you became angry and left. You have orders for Naproxen and Tylenol for pain. Your grievance is without merit. The response at the informal level was in error.
If your medical condition changes please address any concerns through the sick call process.

[signature] — Signature of Health Services Administrator/Mental Health Supervisor or Designee

DNHSA — Title

10-2-12 — Date

RECEIVED-DEPUTY DIRECTOR ARKANSAS DEPARTMENT OF CORRECTION
OCT 8 2012
HEALTH & CORRECTIONAL PROGRAMS

**INMATE'S APPEAL**

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE?

O-Kay To start with if you check on my grievance you will see where Dr. Moore states that he didnd even see me on this day of 8-29-2012. He did I ask him 3 or 4 times what could be done about my Knee to help it he kelp saying There is nothing they could do for my Knee. Now he told me this time after time. I even ask him why ~~[illegible]~~ can't something be done, he just kelp telling me that there was nothing they could do so I got up and left but he still Falsify the Records about not seeing me on 8-29-2012
Check Grievance

Now about my Extra mad if you will check my medical Records you will see that I have deteriorating dic in my back also both of my Shoulders joints are bad plus now I have a bad leg & hip because I've lost all my muscle over a bad Knee Replacement if that ain't reason enough for a Extra mad well what is.

Now about the exercise Dr. Crowell show me on my Knee I don't Know who told you that I don't do that exercise because it not true. I do them I just ~~do~~ can't do them like the doctor show me, I have to be on my bed and use my other leg to put presure on the bad leg. That All I've never said I didn't do them because it hurt. Who ever said all this stuff is falsifing statements.

Now I ask you how can I get help about my Knee or any medical problem I may have when people ain't being truthful about what is going on.

The only Option I have left is The 1983 Act

Please check my medical Records

Thank you

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION
OCT 8 2012
HEALTH & CORRECTIONAL PROGRAMS

**Arkansas Department of Correction**
**Cummins Unit**
**Inter-Office Communication**

---

TO: Inmate C.R. Brannon #124405, Bks 8/B033

FROM: G. Lay, Warden Gaylon Lay

RE: Medical

DATE: June 18, 2012

---

I have spoken to Mrs. Austin, Infirmary Manager, about your medical complaint. She has advised me that Tramadol is not medically indicated for a long term use for your knee problem. You saw the provider on June 13, 2012, and were prescribed Salsalate for knee discomfort. The Ortho provider took your wheelchair and told you to use a walker. You were instructed on exercising your knee.

GL/kb

cc: Inmate file
File



**Mount Laurel**  **Havertown**

# Arthrofibrosis (Stiff Knee Syndrome)

**Alexander Sapega, M.D.**

The material contained in this educational guide is intended solely for informational purposes and is not intended to be offered as medical advice

**Arthrofibrosis is a serious condition that can afflict knee joints that have either been recently injured, operated upon, or both. The process begins when the traumatic stimulus of an injury and/or surgery leads the knee to form extensive, internal scar tissue. This is followed by shrinkage and tightening of the knee's joint capsule (surrounding envelope ligament). Sometimes even nearby tendons outside of the joint stiffen up. This internal and external tightening process may continue to the point where motion between the femur (thigh bone) and tibia (shin bone) is severely restricted. Afflicted patients may permanently lose the ability to fully straighten and/or bend their knee.**

In general, **the likelihood of developing arthrofibrosis increases with the severity of a knee joint injury, the extensiveness of related surgery, and the length of time that the knee is subsequently immobilized.** However, not everyone who sustains a major knee injury or who undergoes major surgery will develop arthrofibrosis. Some people are more prone to developing this problem than others. Genetic factors apparently predispose some patients to develop arthrofibrosis by way of an inherited tendency to form hypertrophic (excessive) internal joint scar tissue in response to injury and/or surgery. Such individuals often heal surgical ligament repairs and grafts quite solidly, but go on to heal "excessively", forming an overabundance of unwanted fibrous scar in their knee. This essentially makes their knee **too** stable, to the point of being stiff and lacking proper joint motion. Such "heavy scar-formers" can literally fill up their entire knee joint cavity with thick, tough scar tissue. This obliterates all of the normal open spaces within the joint, adhering everything together and effectively "freezing" the joint (hence the traditional term "frozen joint").

Patients with "sensitive" knees or low pain thresholds are also more likely to develop this problem, as they find it more difficult than most to use and move their knee after injury or surgery. Lack of joint motion and use leads the knee to form more abundant and less compliant scar tissue than it otherwise would, and allows the relatively unused (and thus unstretched) surrounding knee capsule to contract down and tighten up, almost like "shrink-wrap" does. **A stiff, arthrofibrotic knee is a very difficult problem for the orthopedic surgeon and physical therapist to handle.** It usually requires a specially planned, intensive protocol of surgical treatment **and** post-operative management.

The traditional treatment approach for arthrofibrotic knees that did not loosen up with aggressive stretching and exercise in physical therapy has been to place the patient under anesthesia and then literally break up and tear the restrictive, internal scar tissue within the joint by **forcing** the knee to fully bend and straighten. The surgeon accomplishes this by way of strenuous, manual joint manipulation. The procedure therefore came to be known as a **manipulation under anesthesia**, or **"M.U.A."**, and is still in common use. In cases of severely frozen knees, **extremely** stressful manipulation forces may be required to break up the scar tissue and get the joint moving again. This poses a risk to a patient who has not been able to bear much weight on their leg for quite some time, because the femur and tibia may have lost

a considerable amount of bone mineral (calcium phosphate), thus weakening them. This increases the chance of an inadvertent femoral or tibial **fracture** occurring at the time of the joint manipulation. My preference over the years has been to perform an arthroscopic, internal surgical scar resection to **remove** as much restrictive scar tissue as possible, **prior** to manipulating the knee. This approach not only leaves very little scar within the joint to re-organize and solidify once again, but it also reduces the manipulation force required to get the knee moving, thus reducing (but not eliminating) the chance of femoral or tibial fracture.

## Surgical Treatment

The procedure of arthroscopically removing internal knee joint scar is often long and tedious. Sometimes the joint is packed so thickly with scar tissue that removing it is akin to a slow, meticulous archeological excavation process. The normal internal joint anatomy must be carefully exposed, millimeter by millimeter, as the scar tissue is gradually cut away and removed. All of the internal joint spaces that are normally present should be opened up and restored in this fashion prior to attempting knee manipulation (see FIGURES 1a, 1b, 1c). The lateral retinaculum (capsular envelope ligament just to the outer side of the kneecap) is often especially contracted and tight, and usually must be surgically released (divided) at the same time.



**FIGURE 1a -Arthroscopic view during an early stage of a scar resection procedure in a patient with severe knee arthrofibrosis. This patient's entire internal joint space was filled up with tough, fibrous scar tissue (the white, fluffy/fibrous material seen in this photo), which is nearly all that can be seen here! An arthroscopic tissue resector instrument has removed some scar already, creating a small, open "working space", which is where the lens of the arthroscope was situated when this picture was taken. The resector is then used to progressively remove more and more scar tissue, gradually enlarging the working space, until an anatomic landmark (such as one of the femoral condyles) is uncovered.**




**FIGURE 1b - Arthroscopic view of the same patient's knee, but further along in the procedure. In the background you can see that the arthroscopic scar resector (shiny metal object to the left) has uncovered a portion of the smooth, white femoral condylar surface, marked with an "F". Once such a landmark is identified, the surgeon can then more safely and effectively "excavate" the rest of the knee joint's anatomy out from the mass of scar tissue that has engulfed it. The goal is to open up all of the internal joint spaces to normal or near-normal dimensions, fully exposing the normally free and unencumbered intra-articular joint structures.**




**FIGURE 1c - Arthroscopic view of the same patient's medial joint compartment at the conclusion of the case. The normal, internal joint space has been restored and the medial femoral condyle has been completely released from its enveloping scar tissue cocoon. Similar work has also been done in other knee compartments, in combination with a retinacular release. At this point, the knee is tested to see what free range of motion it has, and if necessary, joint manipulation and stretching are performed to restore the range of motion to normal. With almost all of the internal scar tissue that was formerly restricting the joint removed, the joint manipulation procedure will require significantly less applied force to regain the same range of motion, thus reducing the chance of an inadvertent femoral or tibial fracture.**

In severe cases where the posterior (rear) capsule of the knee is also tightly contracted, thus restricting full knee extension (straightening) **despite** attempted knee manipulation, an open (non-arthroscopic) posterior capsular surgical release may be required. A technique using a

small lateral knee incision may be utilized to minimize surgical dissection trauma directly behind the knee as well as skin scarring.

## Post-Operative Care

No matter how meticulous and thorough a scar tissue resection may be, and even if a full range of knee motion is successfully restored on the operating room table, the biggest challenge is **maintaining** that range of motion after surgery. New scar tissue may rapidly re-form within the joint unless comprehensive action is taken to avoid this. Unless special post-operative pain relief measures are taken, attempting to move the joint through its full range of motion immediately after surgery may simply be intolerable. Unfortunately, if the patient does not move their knee through a full arc of motion repeatedly and fairly continuously in the first 2 to 3 post-operative weeks, they are at risk of having their knee joint become "frozen" once again. Aside from knees where **only** joint **extension** is lacking (which are often best held in a maximally extended position in a full-leg cast for the first several post-op days), the key to better results following surgical procedures for arthrofibrosis is to perform them under epidural anesthesia and to **maintain** this or a supplemental regional, pain-relieving, anesthetic nerve block for a day or two post-operatively, so as to allow joint motion without the inhibiting effect of severe pain. I have been using this anesthetic method following arthrofibrosis surgery for well over a decade. Taking advantage of the ongoing pain relief afforded by the extended anesthetic block effect, a program of **immediate** post-operative physical therapy is begun and continued, utilizing special, passive stretching techniques at the extremes of the knee's range of motion. The patient is also taught how to do their own stretching therapy, to supplement their supervised treatment. A continuous passive joint motion (CPM) machine is used in between stretching sessions, beginning in the recovery room and then continuing at home. This device is a mechanical leg cradle that gently bends and straightens the knee while the patient is lying down in bed. Post-operative medication to inhibit recurrent fibrous scar tissue formation within the knee is also often helpful. Possibilities include intra-articular (injected into the joint) hyaluronate (a joint lubricant) and/or corticosteroid (cortisone) medication administered on one or more occasions in the first post-operative month or two. **Faithful patient compliance** with prescribed outpatient physical therapy treatment and diligent, self-administered stretching in the post-operative phase is critical. Supplemental treatment with an oral anti-inflammatory medication (if the patient's stomach can tolerate it) is helpful.

A severe case of arthrofibrosis can be an extremely difficult challenge for both patient and knee surgeon alike. In this author's experience, the comprehensive treatment program described above has met with good results in most circumstances, including cases of total knee joint replacement that still demonstrated a restricted range of motion despite one or more attempts at manipulation under anesthesia without arthroscopic intervention.



**If you have a stiff or partially "frozen" knee that your surgeon cannot seem to remedy, consider getting an expert second opinion evaluation here at The Knee and Shoulder Centers.**



**New Jersey**
1288 Route 73 South
Suite 100
Mount Laurel, NJ 08054
Phone: 856.273.8900
Fax: 856.802.9772

➤CONTACT US⮜

**Pennsylvania**
Wellness Center Building
2010 West Chester Pike
Havertown, PA 19083
Phone: 610 449 5565
Fax: 856.802.9772

Email: **info@kneeandshoulder.md**